IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRACEY M. HINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-165-RAW-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Tracey M. Hinkle requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 26, 1973, and was thirty-nine years old at the time of the administrative hearing (Tr. 31). She completed the twelfth grade while attending special education classes, and has worked as a customer service representative and secretary (Tr. 24, 166). The claimant alleges inability to work since June 26, 2009, due to depression, diabetes, degenerative arthritis, stuttering, hand tremors, carpal tunnel, obesity, spondylosis of the cervical spine, metal pin in shattered hip and arm, and migraines (Tr. 165).

**Procedural History**

On July 12, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a decision dated January 29, 2013 (Tr. 15-26). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as

defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she must be allowed to alternately sit and stand throughout the workday, and that she could only perform occasional fine and gross manipulation with her hands and fingers. Additionally, he found that she could perform semi-skilled work, which is work that requires some detailed skills, but does not require doing more complex work duties; where interpersonal contact with supervisors and coworkers is on a superficial work basis; and that she can have only occasional contact with the general public (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the economy, *i. e*, information clerk and survey system monitor (Tr. 25).

## Review

The claimant contends that the ALJ erred: (i) by failing to consider all her impairments, including stuttering, in formulating the RFC; (ii) by improperly characterizing "semi-skilled work"; and (iii) by failing to make proper findings related to transferability of skills. The undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the claimant's RFC, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of obesity, diabetes with neuropathy, residuals of fractures, and essential hand tremors, as well as the nonsevere impairments of depression, vitamin D deficiency, sleep apnea, hypertension, degenerative arthritis by history, carpal tunnel by history, spondylosis by history, and migraines by history (Tr. 18). The relevant medical evidence reveals that the claimant

largely received treatment at Carl Albert Indian Hospital. As relevant to this appeal, they had been treating her for her tremors at least as far back as 2007 (Tr. 283). Treatment notes reflect that on December 22, 2010, the claimant reported that she had been having problems with stuttering in combination with her tremors, and continued to report problems with hand tremors and stuttering (often listed as a single impairment in the treatment notes) through January 2012. (Tr. 336, 338-339, 390-391, 426-437). A 2007 CT of the head without contrast showed no acute abnormality (Tr. 247). An April 23, 2009 CT scan of the cervical spine revealed degenerative disc disease and degenerative joint disease (Tr. 245). A December 13, 2010 CT scan of the cervical spine demonstrated spondylosis, while a CT of the brain on the same day was unremarkable (Tr. 280-281). On October 14, 2011, x-rays of the thoracic and lumbar spines revealed moderate and mild spondylosis, respectively, and an October 28, 2011 CT scan confirmed spondylosis and mild degenerative changes (Tr. 414-420). A December 2011 MRI of the cervical spine revealed disk protrusions as the C4-C5 and C5-C6 levels, resulting in mild spinal canal narrowing (Tr. 422). An MRI of the brain showed no significant intracranial abnormalities, and recommended further clinical evaluation (Tr. 424-425).

On August 21, 2009, Dr. William Cooper, D.O., conducted a physical examination of the claimant (Tr. 248). Upon exam, her cervical spine was tender to palpation with full range of motion, and she had hypersensitivity of the feet and lower legs bilaterally, as well as a mild tremor in her hands, but there was no noticeable stutter at that interview (Tr. 250). He found she had a safe and stable gait, and assessed her with: history of fractures of the left hip, left upper arm, left forearm, pelvis, spine, and nose; migraine

headaches versus tension cephalgia; type II diabetes; diabetic neuropathy; mild essential tremor of the hand; transitional stuttering; chronic neck pain; osteoarthritis of the neck; cervical disc disease; major depression; and obesity (Tr. 251).

On May 23, 2011, Dr. Ronald Schatzman conducted a second physical examination of the claimant (Tr. 393). He noted she had a normal range of motion except for her left hip, she could not heel and toe walk, she had normal grip strength and could do gross and fine manipulation, she had full range of motion, and she walked well using a quad cane, with a broad based waddling gait, but was moderately unstable without it (Tr. 394-395). In his assessment, he noted that he believed she was safer with a quad cane (Tr. 395).

On June 29, 2011, Dr. Easwar M. Sundaram Jr., M.D., had a neurology appointment with the claimant, at which time she reported that her tremors affected her speech, and that there were times she would stutter and could not get the words out, and tended to bark words out, and that when it was mild she sounded like she had the hiccups (Tr. 409). He noted she had no speech difficulties that day, but was positive for tremors, and assessed her with, *inter alia*, essential and other specified forms of tremor (Tr. 411).

On September 14, 2009, a state reviewing physician found that the claimant could perform light work with no postural limitations, but on June 27, 2011, a different physician found she could perform sedentary work (Tr. 271-277, 401-407).

In his written opinion, the ALJ found that the claimant had several severe and nonsevere impairments as stated above (Tr. 18). He summarized the claimant's testimony at the administrative hearing, as well as the medical evidence. The ALJ noted

the claimant had a BMI of 57.9, that her diabetes was under good control when she was diet compliant, and that she had no numbness or weakness in relation to her neuropathy (Tr. 22). As to the claimant's essential hand tremors, he noted the diagnoses of degenerative disc disease, degenerative joint disease, and disc protrusions, but that her CT scans and brain MRI were normal and she had reportedly good grip strength (Tr. 22). As to her residuals of fractures, the ALJ noted that the claimant had a stable gait upon examination and that she had normal range of motion except for her left hip (Tr. 23). He favorably recited the state reviewing physicians who found the claimant could perform sedentary work, because they agreed with his RFC assessment, and only gave some weight to the state opinions that she could perform light work, but only to the extent she could do sedentary work (Tr. 23). He found the claimant not credible and rejected a Third Party Function Report submitted by a friend, then determined that the claimant was not disabled.

Although the ALJ found in his written opinion that the claimant's obesity was a severe impairment, he failed to include any limitations related to the impairment in the claimant's RFC at step four. The ALJ did not provide any explanation for this apparent inconsistency, *see, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of

sedentary work."). An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *1, *5-*6, *7 (Sept. 12, 2002); *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). The ALJ should have explained why the claimant's obesity did not call for corresponding physical limitations. A recitation of the claimant's reported BMI does not constitute a proper consideration of the claimant's severe impairment of obesity, and the ALJ's failure to connect the claimant's obesity to the claimant's RFC, or to determine whether the medical evidence demonstrated any *additional or cumulative* effects, was error. *See, e. g., Fleetwood*, 211 Fed. Appx. at 741-42, *citing* Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *1, *5-*6, *7.

Furthermore, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished

opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). In fact, the ALJ noted at one point that the claimant alleged disability based on a number of impairments, including stuttering, but failed to acknowledge any part of the record discussing the claimant's stuttering, apparently dismissing it without even discussing whether it was a nonsevere impairment. Moreover, the ALJ stated at step four that the claimant had evidence of degenerative disc disease and degenerative joint disease of the cervical spine, but did not include any of these impairments in his discussion of the claimant's impairments, much less her RFC. This was further error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). The ALJ determined that the claimant had other severe impairments, so any failure to find these additional impairments severe is considered harmless error. Nevertheless, the ALJ was not entitled to ignore them completely. *See Hill*, 289 Fed. Appx. at 292 ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this

does not mean the omitted impairment simply disappears from his analysis.) [emphasis in original] [citations omitted].

The ALJ thus failed to properly assess the claimant's RFC at step four. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**